# Illinois Official Reports

## Appellate Court

*Cooke v. Illinois State Board of Elections*, 2018 IL App (4th) 170470

| | |
|---|---|
| Appellate Court Caption | DAVID W. COOKE, Petitioner, v. THE ILLINOIS STATE BOARD OF ELECTIONS; CHARLES W. SCHOLZ, in His Official Capacity as Chairman; ERNEST L. GOWEN, in His Official Capacity as Vice Chairman; WILLIAM M. McGUFFAGE, in His Official Capacity as Member; ANDREW K. CARRUTHERS, in His Official Capacity as Member; WILLIAM J. CADIGAN, in His Official Capacity as Member; BETTY J. COFFRIN, in Her Official Capacity as Member; CASANDRA B. WATSON, in Her Official Capacity as Member; COMMITTEE FOR FRANK J. MAUTINO; and PHILIP M. KRASNY, Hearing Officer, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-17-0470 |
| Filed | May 22, 2018 |
| Decision Under Review | Petition for review of order of Illinois State Board of Elections, No. 16-CD-93. |
| Judgment | Remanded with directions. |
| Counsel on Appeal | Jeffrey M. Schwab, Jacob H. Huebert, and James J. McQuaid, of Liberty Justice Center, of Chicago, for petitioner. |

J. William Roberts, Sergio E. Acosta, Anthony J. Jacob, Adam R. Vaught, and Carson R. Griffis, of Hinshaw & Culbertson LLP, of Chicago, for respondent Committee for Frank J. Mautino.

Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Aaron T. Dozeman, Assistant Attorney General, of counsel), for other respondents.

| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Holder White and Turner concurred in the judgment and opinion. |
| --- | --- |

## OPINION

¶ 1        David W. Cooke seeks direct review of a decision of the Illinois State Board of Elections (Board) concerning his complaint against the Committee for Frank J. Mautino (Committee). Cooke argues we should remand the matter for the Board to address and issue rulings on the merits of those claims which it failed to address. Alternatively, Cooke argues, to the extent the Board did in fact issue rulings on all of his claims, we should find any rulings against him to be clearly erroneous based on the evidence presented. We remand with directions.

¶ 2                                            I. BACKGROUND
¶ 3                                    A. Cooke's *Pro Se* Complaint
¶ 4        In February 2016, Cooke, an Illinois resident, filed a *pro se* complaint with the Board, alleging the Committee committed various violations of article 9 of the Election Code (10 ILCS 5/9-1 to 9-45 (West 2014)) based on its reported expenditures to Happy's Super Service Station (Happy's) and Spring Valley City Bank (Bank) between 1999 and 2015. Specifically, Cooke alleged the Committee violated (1) section 9-7(1) of the Election Code (*id.* § 9-7(1)), which requires a treasurer of a political committee to keep a detailed and exact account of a committee's expenditures and (2) section 9-8.10(a)(2) of the Election Code (*id.* § 9-8.10(a)(2)), which prohibits a political committee from making expenditures in excess of the fair market value of the services, materials, facilities, or other things of value received in exchange.

¶ 5        As to the nature of the alleged violations, Cooke asserted, citing the Committee's public reports detailing the expenditures made to Happy's and the Bank, (1) "[a] majority of the expenses are recorded in whole dollar amounts, which strains reason to believe these expenses are for actual services rendered"; (2) "[a]n invoice almost never rounds to whole numbers, especially when repairs and fuel expenses are paid"; (3) "[i]t is apparent the [B]ank could not be providing the services for which the expenses were paid"; (4) "extremely high amounts of expenses were allocated to [Happy's], *** total[ing] over $200,000 in just over a ten year

period"; (5) "[n]o reasonable person would spend this type of money on fuel and expenses in this time period, especially when normal legislative travel expenses are reimbursed from the state"; (6) "[i]dentical expenses were reported for exactly $1500 dollars for a camp vehicle repair in a short amount of time and other high amounts for this vehicle as well"; (7) "[t]he rounding of numbers for expense records leads to a legitimate question of whether actual expenses are inflated above fair market value in order compensate friends of the Committee"; (8) "[t]he expenses to the [Bank] are almost entirely whole numbers and leave to [*sic*] trail of the expenses once the cash had been withdrawn from the account"; and (9) "[t]he amount of expenses expended for gasoline[ ] are highly questionable due to extremely high individual amounts and rounding of numbers." Cooke attached to his complaint copies of the public reports detailing the expenditures made to Happy's and the Bank.

¶ 6                                    B. Closed Preliminary Hearing

¶ 7         On March 1, 2016, a hearing officer, who had been appointed by the Board, held a closed preliminary hearing for the purpose of making a recommendation to the Board as to whether Cooke's complaint was filed on justifiable grounds. Cooke appeared *pro se*, and the Committee appeared through counsel.

¶ 8         The Committee initially noted it would be filing a written motion to dismiss Cooke's complaint on the grounds the (1) Board lacked jurisdiction because the Committee was dissolved after Frank J. Mautino became the Illinois Auditor General on January 1, 2016, and (2) complaint was insufficient because it failed to identify the nature of the offense. Cooke responded to the Committee's argument. The hearing officer indicated he would consider the motion to dismiss in making his recommendation and forward any written motion and response to the Board.

¶ 9         The hearing officer allowed Cooke to present evidence and argument on his complaint to determine if it was filed on justifiable grounds. Cooke submitted copies of the Committee's public reports detailing the expenditures made to Happy's and the Bank, which the hearing officer admitted into evidence. Based on those reports, Cooke argued, in addition to the alleged violations of sections 9-7(1) and 9-8.10(a)(2), the Committee violated section 9-8.10(a)(9) of the Election Code (*id.* § 9-8.10(a)(9)), which (1) permits a political committee to purchase or lease a motor vehicle and maintain and repair that vehicle if the vehicle is used primarily for campaign purposes or for the performance of governmental duties and (2) provides individuals using privately owned vehicles may be reimbursed for actual mileage for using their vehicle for campaign purposes or for the performance of governmental duties. Specifically, Cooke argued, based on the reports detailing the expenditures to Happy's, he was unable to determine whether the gas and repair expenses were for vehicles owned by the Committee and that determination would affect whether the gas and repairs were properly expensed. The Committee noted an alleged violation of section 9-8.10(a)(9) was not raised in the complaint, and the evidence provided did not support any such violation.

¶ 10          C. Committee's Motion to Strike and Dismiss Cooke's Complaint

¶ 11        On March 31, 2016, the Committee filed a motion to strike and dismiss Cooke's complaint, asserting (1) the Board lacked jurisdiction over the Committee as a result of its dissolution and (2) "each of the allegations contained in the [c]omplaint fails to state an offense or violation upon justifiable grounds." As the second basis for dismissal, the Committee argued, (1)

"[n]owhere in the [c]omplaint, even after reviewing [the nature of the alleged violations] and the attachments and exhibits to the [c]omplaint, does [Cooke] allege, suggest[,] or provide proof that [it] has violated the part of [s]ection 9-7 cited in the [c]omplaint" and (2) "[n]owhere in the evidence or in the [c]omplaint does [Cooke] provide what is fair market value for services and other things of value to determine if there is an excess of fair market value."

¶ 12                    D. Cooke's Response to the Committee's Motion
                           to Strike and Dismiss His Complaint

¶ 13        On April 5, 2016, Cooke filed a *pro se* response to the Committee's motion to strike and dismiss his complaint. In summarizing his complaint, Cooke contended, citing section 9-7, the Committee's public reports detailing the expenditures made to Happy's and the Bank lacked the requisite "detail in the particulars." Cooke also asserted, based on those reports, (1) questions existed as to the propriety of the expenditures for gas and repairs to Happy's under section 9-8.10(a)(9) and (2) it was "impossible" to determine if the (a) amounts expensed to the Bank "exceeded fair market value for the services or good provided" under section 9-8.10(a)(2) and (b) Committee followed the requirement of section 9-11(a) of the Election Code (*id.* § 9-11(a)) to report expenditures to any individual which exceeds $150. In responding to the Committee's arguments, Cooke maintained (1) the Board had jurisdiction and (2) his complaint sufficiently identified issues with the recording of expenses to Happy's and the Bank.

¶ 14                 E. Committee's Reply to Cooke's Response to Its Motion
                         to Strike and Dismiss Cooke's Complaint

¶ 15        On April 11, 2016, the Committee filed a reply to Cooke's response to its motion to strike and dismiss Cooke's complaint. The Committee argued Cooke could not use his response to amend the allegations in his complaint and his attempt to use his response to amend his complaint demonstrated the complaint was insufficient as a matter of law.

¶ 16                            F. Hearing Officer's Recommendation

¶ 17        On April 29, 2016, the hearing officer issued a written recommendation. In reviewing the complaint, he noted (1) Cooke alleged the "Committee violated [s]ection[s] 9-7 and 9-8.10" and (2) "the documentation, amount[,] and accuracy of reported expenditures to [the Bank] and [Happy's] are questioned." In reviewing the events of the closed preliminary hearing, the hearing officer noted Cooke asserted the public reports "lack specificity," and he "question[ed] the propriety of expenditures related to the automobiles for gas and/or repairs." The hearing officer then listed various discrepancies in the public reports concerning the expenditures made to Happy's and the Bank.

¶ 18        The hearing officer reviewed the Committee's motion to strike and dismiss Cooke's complaint, Cooke's response, and the Committee's reply. He noted Cooke's response raised alleged violations of section 9-11(a). The hearing officer rejected the Committee's jurisdictional argument. As to the sufficiency of Cooke's complaint, the hearing officer noted "[t]he two specific sections alleged to be violated are [s]ection 9-7 (treasurer keeping certain records) and [s]ection 9-8.10[(a)](2) (making expenditures in excess of fair market value)." The hearing officer found Cooke entered sufficient evidence to support his allegations. He also

- 4 -

found the Committee, based on Cooke's attachment of the public reports detailing the expenditures made to Happy's and the Bank to his complaint, "was aware that the propriety of those expenditures was at issue." The hearing officer recommended the Board deny the Committee's motion to strike and dismiss Cooke's complaint.

¶ 19 As to whether Cooke's complaint was filed on justifiable grounds, the hearing officer found the public reports detailing the expenditures made to Happy's and the Bank "lack[ed] sufficient detail to determine if the breakdown is accurate." The hearing officer also found Cooke had shown it was "arguabl[e]" as to whether the public reports complied with section 9-11(a). He noted:

> "A cursory review of the [public reports] disclose[d], at a minimum, lack of detail as to the ultimate beneficiary of expenditures to [the Bank] and an insufficient breakdown for repairs, gas, etc., to [Happy's]."

Similarly, the hearing officer found:

> "At a minimum, the expenditures to [Happy's] lack[ed] sufficient detail and a breakdown between gas and repairs as to vehicles is required. Furthermore, the report[s] should clarify whether the vehicles are owned and/or leased by [the Committee], or are private vehicles."

As to the public reports concerning the Bank, the hearing officer found: "The expenditures to [the Bank] lack sufficient detail and do not disclose the purpose and/or recipients of numerous disbursements." The hearing officer concluded:

> "The purpose of the closed preliminary hearing is to determine if the complaint is filed upon justifiable grounds. [Cooke] has met that standard."

¶ 20 Based on his findings, the hearing officer recommended: (1) the Committee's motion to strike and dismiss the complaint be denied, (2) the Board enter an order finding "[t]he [c]omplaint is filed upon justifiable grounds," and (3) "[t]he matter proceed to a public hearing unless [the Committee] files amended reports with sufficient detail within 60 days *** as to [e]xpenditures made to [Happy's] and [the Bank]."

¶ 21                    G. General Counsel's Recommendation

¶ 22 On May 12, 2016, the Board's general counsel issued a written recommendation. The general counsel concurred with the recommendations of the hearing officer but recommended the Board direct the Committee to amend its public reports to include specific information concerning the expenditures made to Happy's and the Bank. He recommended the Board direct the Committee to amend its public reports to (1) include an accurate breakdown between gas and repair expenditures to Happy's and indicate whether the vehicles involved in each itemized expenditure were either owned or leased by the Committee or privately owned and (2) identify the actual recipient of each itemized expenditure from the Bank and its specific purpose.

¶ 23                       H. May 16, 2016, Board Meeting

¶ 24 At a May 16, 2016, meeting, the Board addressed Cooke's complaint. Cooke appeared *pro se*, and the Committee appeared through counsel. The Board's general counsel provided a brief review of the complaint and the prior proceedings to the Board. He stated, in part, as follows:

"[Cooke] is challenging the propriety and/or lack of specificity as to the reported expenditures, and the relatively obvious poor quality of the reporting on these particular expenditures makes it difficult to draft a more focused complaint. The expenditures to [Happy's] lack sufficient detail breaking down the various payments as being for gas or repairs to particular vehicles and whether those vehicles are owned or leased by the [C]ommittee or are private vehicles. The expenditures to [the Bank] lack sufficient detail as to the specific purposes and ultimate recipients of the disbursements."

¶ 25     The Board allowed Cooke the opportunity to make a statement. Cooke initially discussed the idea of "amending the complaint." He stated, in part, "just amending the complaint doesn't get to how we got to the impropriety that we're at and the inaccurate reporting as it is." Chairman Charles W. Scholz clarified to Cooke the hearing officer's and the general counsel's recommendations related to amending the public reports, as opposed to the complaint, to obtain the requisite disclosure. After Chairman Scholz's clarification, Cooke stated:

"Okay. Then at that point would the—the hearing would continue then once that happened? Or what would—I guess I don't understand. I thought that would be the end of the—if they did that, everyone's happy and the complaint's over with. Maybe I misunderstood the process."

The general counsel indicated he believed the hearing officer was attempting to get the public reports amended to comply with the Election Code and, "[i]n the event that [the Committee] can't do that in whatever time frame it is that the Board would grant, we would then proceed with the public hearing." At another point during the meeting, Cooke noted the Committee's public reports lacked any indication mileage was expensed for campaign workers' private vehicles, and therefore, any expenditures reported for gas had to be for a campaign vehicle, and information concerning whether the Committee owned a campaign vehicle could be found by means other than amending the public reports.

¶ 26     Based on the evidence, argument, and recommendations, the Board denied the Committee's motion to dismiss, found "the complaint was filed on justifiable grounds," and ordered the Committee to file amended reports with the specificity outlined by the general counsel. Chairman Scholz noted "[w]e're going to give a chance for compliance."

¶ 27                                    I. May 18, 2016, Order

¶ 28     On May 18, 2016, the Board entered a written order. The Board initially noted the complaint alleged the Committee "violated [sections 9-7 and 9-8.10] in that the [Committee] failed to keep a detailed and accurate account of contributions and expenditures and made expenditures in excess of the fair market value." The Board then made the following two findings:

"1. A [m]otion to [s]trike and [d]ismiss was filed by [the Committee] on [March 31, 2016,] asserting that the Board lacks jurisdiction over a committee that has filed a [f]inal report; and

2. In regard to the allegations that the expenditures made to [Happy's] and [the Bank] lack sufficient detail, the complaint was filed on justifiable grounds."

¶ 29     The Board ordered, in part, as follows:

- 6 -

"1. The recommendations of the [h]earing [o]fficer and the [g]eneral [c]ounsel are adopted; and

2. The [m]otion to [s]trike and [d]ismiss the complaint is [denied]; and

3. No later than July 1, 2016, the [Committee] shall file amended reports as follows:

a) In relation to [Happy's] expenditures, the [Committee] shall provide an accurate breakdown between gas and repairs, and indicate whether the vehicles involved in each itemized expenditure are owned or leased by the [C]ommittee, or are privately owned, and

b) In relation to [the Bank] expenditures, the [Committee] shall identify the actual recipient of each itemized expenditure, as well as the specific purpose for each one[;]

4. Failure to amend the reports as specified by the date specified will result in a [p]ublic [h]earing being held."

¶ 30                          J. Committee's First Motion to Stay

¶ 31    On June 1, 2016, the Committee filed a motion to stay the proceedings based on an alleged federal investigation into the Committee and its expenditures. Specifically, the Committee argued a stay was warranted "so that Frank J. Mautino *** will not be forced to have to choose to claim or waive the protection of his Fifth Amendment rights in this Illinois State Board of Elections *** proceeding where there is a pending, parallel federal criminal investigation and both proceedings involve the same subject matter." The Committee also alleged, "on or about May 18, 2016, it was publically reported that campaign workers for Mautino, while he was a state legislator, have received federal grand jury subpoenas and that a federal investigation is pending."

¶ 32    On June 7, 2016, the Board's general counsel issued a written recommendation. The general counsel initially noted: "At the last meeting, the Board found the [c]omplaint to be filed upon justifiable grounds, and that the matter should proceed to public hearing, unless the Committee files amended reports as to [Happy's] and [the Bank] expenditures within 60 days." Based on the reported federal investigation, the general counsel recommended the Board grant the Committee's motion to stay.

¶ 33    At a June 13, 2016, meeting, the Board addressed the Committee's motion to stay. When reviewing the prior proceedings, the Board's general counsel initially noted "[t]he Board had found the complaint to be filed upon justifiable grounds and that the matter should proceed to public hearing unless the committee filed amended reports as to the two items that were raised in the complaint within 60 days." The general counsel stated the United States Attorney's office had not confirmed the existence of any federal proceedings. The Board continued the matter to July 11, 2016, to allow its general counsel to inquire further into the alleged federal investigation and extended the Committee's deadline to file its amended reports to that same date.

¶ 34    On June 28, 2016, the United States Attorney for the Central District of Illinois issued a letter to the Board's general counsel, which declined to comment on the existence of a federal investigation.

¶ 35    At a July 11, 2016, meeting, the Board, by way of a 5 to 3 vote, denied the Committee's motion to stay. The Board extended the Committee's deadline to file its amended reports to

July 25, 2016. The Board's written order provided: "Failure to file [the amended reports] will result in the appointment of a [h]earing [o]fficer and the holding of a timely [p]ublic [h]earing in the matter."

¶ 36                                    K. July 25, 2016, Deadline to Produce Amended Reports

¶ 37        On July 25, 2016, the Committee did *not* file amended reports as required by the Board's May 18, 2016, order. Thereafter, the Board appointed a hearing officer to conduct a public hearing.

¶ 38                                    L. Committee's Second Motion to Stay

¶ 39        On September 6, 2016, the Committee filed a second motion to stay, which was substantially similar to its first motion to stay. On September 12, 2016, the Board's general counsel issued a memorandum, advising a denial of the motion would be consistent with the Board's prior decision.

¶ 40        At a September 19, 2016, meeting, the Board addressed the Committee's second motion to stay. During the hearing, Vice Chairman Ernest L. Gowen noted its last order was for the Committee to file amended reports, which was "a very limited obligation on [the] [c]ommittee, extremely limited." The Board denied the Committee's second motion to stay and ordered "[a] [p]ublic [h]earing be held in this matter as expeditiously as possible." The Committee appealed the denial of its second motion to stay to the Illinois Appellate Court, First District.

¶ 41                                    M. Committee's Appeal

¶ 42        In March 2017, the First District dismissed the Committee's appeal for lack of jurisdiction, concluding the Board's ruling on the Committee's motion to stay was not an administrative decision subject to its review. *Committee for Frank J. Mautino v. Illinois State Board of Elections*, 2017 IL App (1st) 162530-U, ¶ 13.

¶ 43                                    N. Public Hearing

¶ 44        On April 20, 2017, the appointed hearing officer conducted a public hearing. Both Cooke and the Committee appeared with counsel. At the beginning of the hearing, the hearing officer stated the issue subject to the public hearing "ha[d] gotten a little fuzzy as we've gone along." The hearing officer noted the Board had issued an order requiring the Committee to amend its public reports, which the Committee failed to do. The hearing officer found, comparing the situation to that where a party fails to comply with a court's discovery order, the focus of the hearing related to whether the Committee willfully violated the Board's order as opposed to whether the Committee violated the Election Code. Cooke objected, maintaining the purpose of the hearing was also to determine whether the Committee violated the Election Code. The hearing officer acknowledged "the complaint raise[d] other issues, but *** the [Board's] orders really sort of narrowed everything down to ordering that the amendments be made vis-à-vis those two specific expenditures."

¶ 45        Notwithstanding his finding concerning the scope of the hearing, the hearing officer allowed the parties to present evidence, which included transcripts from a deposition of the Committee's former treasurer, and argument relating to both the Committee's failure to

comply with the Board's order and the substantive issues raised in the complaint. The hearing officer also allowed the parties to submit written briefs in support of their respective positions.

¶ 46    In his written brief, Cooke argued the Committee (1) failed to provide an adequate justification for failing to comply with the Board's May 18, 2016, order and requested the Board impose a $5000 fine in accordance with section 9-23 of the Election Code (10 ILCS 5/9-23 (West 2014)); (2) made prohibited expenditures to Happy's in excess of $225,000 for gas and repairs for privately owned vehicles in violation of section 9-8.10(a)(9) and requested the Board impose, at a minimum, a $225,109.19 fine in accordance with section 9-8.10(b) of the Election Code (*id.* § 9-8.10(b)); (3) made prohibited expenditures to Happy's in excess of fair market value for gas and repairs for privately owned vehicles in violation of section 9-8.10(a)(2) and requested the Board impose, at a minimum, a $225,109.19 fine in accordance with section 9-8.10(b); (4) made prohibited expenditures to the Bank in excess of fair market value for services the Bank did not provide in violation of section 9-8.10(a)(2) and requested the Board impose, at a minimum, a $159,028 fine in accordance with section 9-8.10(b); and (5) failed to properly record and report every person to whom it made expenditures in violation of sections 9-7(1) and 9-11(a) but did *not* request the Board impose any fines for such violations. Cooke asserted the Board should rule on the substantive issues because "[a]nother hearing would provide no additional benefit and would only waste resources."

¶ 47    In its written brief, the Committee asserted "[t]he only issue squarely before the Board [was] whether the [Committee] willfully violated the Board's order issued May 18, 2016." In support, the Committee cited the Board's May 18, 2016, order, which it asserted "significantly narrowed the scope of the allegations contained in the [c]omplaint." The Committee argued it had not willfully violated the Board's order and cited several grounds in support of its argument. The Committee responded to Cooke's substantive argument suggesting it made expenditures in excess of fair market value, contending the argument was baseless as Cooke failed to offer any evidence establishing the fair market value of the goods and service purchased or that the Committee's expenditures in fact exceeded fair market value.

¶ 48                            O. Hearing Officer's Recommendation

¶ 49    On May 5, 2017, the hearing officer issued a written recommendation. In reviewing the procedural history, the hearing officer noted the prior hearing officer recommended the Board find "the complaint was filed upon justifiable grounds and that 'the matter proceed to a public hearing unless [the Committee] files amended reports with sufficient detail *** as to [e]xpenditures made to [Happy's] and [the Bank],' " which the Board adopted. As to the pertinent statutes, the hearing officer cited sections 9-7(1), 9-8.10(a)(9), 9-8.10(a)(2), and 9-11(a).

¶ 50    The hearing officer found his assignment "was limited to opining on whether the [Committee] willfully refused to abide by the Board's May 18, 2016[,] order." Based on his analysis of that issue, the hearing officer recommended the Board find the Committee had (1) not willfully violated the Board's May 18, 2016, order concerning disclosure of reports filed prior to 2014 because those records were lawfully destroyed; (2) not willfully violated the Board's May 18, 2016, order concerning the disclosure of information on whether the Committee owned or leased any vehicles because its treasurer's deposition testimony indicated the Committee never owned or leased any vehicles; and (3) willfully violated the Board's May 18, 2016, order concerning disclosure of reports filed in 2014 and 2015. The hearing examiner

recommended the Board access a fine consistent with sections 9-10 and 9-23 of the Election Code (*id.* §§ 9-10, 9-23).

¶ 51                          P. General Counsel's Recommendation

¶ 52    On May 10, 2017, the Board's general counsel issued a recommendation. The general counsel concurred with the hearing officer's recommendation with one exception. He stated:

> "The [h]earing [o]fficer is reading the Board's prior order(s) relating to amending the Committee's reports as essentially unqualified or unequivocal directives. In essence, the [h]earing [o]fficer interpreted the past orders as requiring the amendments, with a failure to amend in a timely fashion resulting in both the immediate ability to assess fines and having the matter proceed to public hearing. It is my reading of the past orders that the Committee was presented with two options. One option being to file the amendments and avoid the public hearing process; the other option being to proceed to public hearing. I believe the Board would need to have an unequivocal order to file the amendments, with an explicit reference to the possibility of a fine *** to put us in the position of imposing a fine. It would be my recommendation that the Board order the Committee to amend its 2014 and 2015 reporting as to [Happy's] and [the Bank] expenditures within 30 days, or face a fine of up to $5,000. With the June Board meeting being 36 days from now, the Board would be in the position to proceed with an appropriate fine at the June 20 Board meeting, and determine whether it also desires to refer the matter to the [Attorney General's] office."

¶ 53                          Q. May 15, 2017, Board Meeting

¶ 54    At a May 15, 2017, meeting, the Board addressed Cooke's complaint. Both Cooke and the Committee appeared through counsel. The Board's general counsel indicated he was concurring with the hearing officer's recommendations. The Board allowed the parties to present argument.

¶ 55    Cooke argued the Board should (1) address the merits of his complaint and (2) reject the recommendations as to whether the Committee willfully violated the Board's May 18, 2016, order concerning the disclosure of information on whether the Committee owned or leased any vehicles. After Cooke's argument, Chairman Scholz questioned the general counsel as to whether the sole issue concerned the Committee's failure to comply with the May 18, 2016, order. The general counsel stated:

> "I believe what [the hearing officer] was doing with the testimony at the hearing—we had already established that [Happy's] and [the Bank] reporting was deficient all the way back from the closed hearing, and that led into our [May 18, 2016,] order *** that the [Happy's] and [the Bank] reports should be amended.
>
> Had they been amended, we wouldn't have had to go to public hearing. Having not been amended, we did proceed to public hearing.
>
> I think [the hearing officer] was taking the deficiency as to the reporting on those two items as being sort of res judicata or already decided as a part of the matter, and he wasn't re-litigating them at the public hearing although both parties did put evidence in *** that regard."

- 10 -

When asked again by other Board members as to the issue(s), the general counsel asserted the issue was whether or not the Committee had a valid defense for not complying with the Board's May 18, 2016, order. The Board's general counsel also confirmed "$5,000 [was] the maximum fine for failure to comply with a Board order."

¶ 56 After the Committee presented argument maintaining it had not willfully violated any part of the Board's May 18, 2016, order, Member William M. McGuffage expressed concern with issuing any ruling when a possible federal investigation was ongoing and recommended staying the matter. Member McGuffage stated, in part:

"Now, we shouldn't even have this thing here. I mean, I think there should be a hearing on the merits. There's some problems here. But I don't think we should be hearing on the—we should be conducting a hearing on the merits either today or later on."

Member McGuffage later stated:

"You know, we can—we can vote that they failed to comply with the Board order and issue a fine, but the other—as I said before, the only way we're going to get to the bottom of this—and I think that there are disclosure problems here—is through discovery subpoenas, and we're not going to get there.

* * *

You know, I think we're—we should not—I don't think at this point we can conduct a hearing on the merits. I really don't. And, you know, I voted for the motion to stay. You know, I'm going to vote against the follow-up motion that we're going to vote on today. I just think it shouldn't be here."

¶ 57 At another point during the hearing, Member McGuffage stated:

"We're not at a public hearing stage. We're only here like an interlocutory stage to decide whether or not [the Committee] violated a [Board] order."

Member Keith agreed with Member McGuffage's characterization of the proceedings, noting:

"We're not finding that the [C]ommittee did or did not violate the Election Code if we adopt the recommendation of the hearing officer. We're finding that [it] failed to comply with a Board order."

Member McGuffage moved to stay the proceeding due to the reported federal investigation. The motion failed by a 5 to 3 vote.

¶ 58 After the Board addressed the Committee's failure to comply with its May 18, 2016, order, Cooke again requested the Board address the merits of his complaint. Chairman Scholz stated those issues were "not before the Board," and Member McGuffage stated "[t]his isn't a hearing on the merits." Cooke asserted:

"If this Board doesn't take action on [the complaint], that means that *** we have to have another public hearing and then another hearing [officer] take—make a recommendation and then another Board meeting. This is just a waste of time."

Cooke maintained sufficient evidence was before the Board to address and issue rulings on his complaint.

¶ 59 The Board adopted the hearing officer's first and third recommendations but rejected the second, concluding the Committee *did* willfully fail to comply with the part of its order requiring it to disclose whether the Committee owned or leased any vehicles. The Board found it appropriate to impose a $5000 fine against the Committee.

¶ 60    After making its findings and rulings, the Board discussed referring the matter to the Attorney General's office. Member McGuffage maintained the matter could not be referred because there had been "no finding of a violation" on the complaint. Chairman Scholz agreed with Member McGuffage, noting "the only thing we've found is that the Board order wasn't complied with." Member William J. Cadigan noted "I think in the past we've made criminal referrals without making an actual finding on the merits." Member McGuffage maintained:

"Well, they violated our order to produce the documents, disclosures to clarify [the] reports as to, you know, where the expenditures actually went. That's what we're talking about. [The Committee] failed to comply with the order, and I understand I can understand because of the federal case why [it] failed to comply. But, you know, that—that—that's not the substance of this case.

This is like an interlocutory matter here, you know. [It] failed to comply. [It is] fined. Okay. And—but the beat goes on, you know. We need a hearing on the merits, a final determination, a final order before we can start discussing whether or not there's a criminal violation here and that the matter should be referred to a law enforcement agency."

By way of a 4 to 4 vote, the Board declined to forward the matter to the Attorney General's office.

¶ 61                                R. Board's Order

¶ 62    On May 18, 2017, the Board issued a written order. The Board made the following relevant findings: (1) "[o]n May 18, 2016, the Board adopted the [h]earing [o]fficer's recommendation finding justifiable grounds for filing the complaint, and issued an [o]rder directing the [Committee] to amend its campaign disclosure reports to provide an accurate breakdown between gas and repair[s], indicate whether vehicles involved were owned or leased by the Committee or were privately owned, and identify the actual recipient of each itemized expenditure as well as the specific purpose for each one"; (2) "[t]he [Committee] did not file amended campaign disclosure reports as ordered, and *** [a] [h]earing [o]fficer *** was appointed for the purpose of holding a timely public hearing"; (3) "[o]n Septemenber 21, 2016, the Board denied *** the [Committee's] [second] [m]otion to [s]tay *** and remanded the matter back to the appointed [h]earing [o]fficer for public hearing"; (4) "[t]he evidence presented at public hearing established that the [Committee] violated [s]ection 9-8.10 of the *** Election Code by filing disclosure reports that were insufficient with regard to documentation, amount and accuracy of reported expenditures to [the Bank] and [Happy's]"; and (5) "the evidence at the public hearing established *** the [Committee] willfully violated the Board's [May 18, 2016,] [o]rder[ ] in the following particulars: (a) by failing to provide information regarding the ownership or lease of vehicles repaired or serviced with committee funds, (b) by failing to amend disclosure reports filed in 2014 and 2015 to reflect an accurate breakdown between gas and repair made to [Happy's], (c) by failing to amend disclosure reports filed in 2014 and 2015 to indentify the actual recipient of each itemized expenditure made to [Happy's], and (d) by failing to amend disclosure reports filed in 2014 and 2015 to identify the specific purpose of expenditures made to [the Bank]."

¶ 63    The Board ordered, in part, as follows: (1) "[the] [h]earing [o]fficer['s] and the [g]eneral [c]ounsel['s] recommendations numbered one and three are adopted"; (2) "[the] [h]earing [o]fficer['s] and the [g]eneral [c]ounsel['s] recommendation number two is not adopted"; and

(3) "[f]or its willful violation of the Board's May 18, 2016[,] [o]rder ordering it to provide information as to the ownership or lease of repaired or serviced vehicles, and to amend its disclosure reports filed in 2014 and 2015 to reflect an accurate breakdown between gas and repairs made to [Happy's], and to identify the specific purposes of expenditures made to [the Bank], the [Committee] is hereby assessed a civil penalty in the amount of $5000.00."

¶ 64                           S. Cooke's Motion to Reconsider

¶ 65        On May 24, 2017, Cooke filed a motion to reconsider, arguing the Board failed to address and issue rulings on the merits of his section 9-8.10(a)(2) and (a)(9) claims, which could subject the Committee to additional fines under section 9.8-10(b). Cooke argued his complaint was found to be filed on justifiable grounds, and therefore, he was entitled to a public hearing on those claims if the Committee did not amend its reports. Cooke noted a finding in the Board's May 18, 2017, written order referenced "[s]ection 9-8.10," but he maintained the substance of that finding indicated the Board's finding was in fact based on a violation of section 9-11(a). Cooke requested the Board address and rule on the merits of his section 9-8.10(a)(2) and (a)(9) claims or direct a hearing officer to conduct another public hearing on the matter.

¶ 66              T. The Committee's Response to Cooke's Motion to Reconsider

¶ 67        On June 7, 2017, the Committee filed a response to Cooke's motion to reconsider, maintaining the only issue that proceeded past the closed preliminary hearing was the sufficiency of its reports and not whether the expenditures were improper.

¶ 68                    U. Hearing on Cooke's Motion to Reconsider

¶ 69        On June 20, 2017, the Board held a hearing on Cooke's motion to reconsider. The Board's general counsel recommended the Board deny the motion to reconsider. The Board allowed Cooke to present argument on his motion and the Committee an opportunity to respond.

¶ 70        Cooke requested the Board address and rule on the merits of his section 9-8.10(a)(2) and (a)(9) claims and impose an appropriate penalty or direct a hearing officer to conduct another public hearing on the matter. The Committee maintained the Board had addressed all of the matters properly before it.

¶ 71        Member Andrew K. Carruthers moved to grant the motion to reconsider, stating:
            "From reviewing the record, I believe that evidence was presented of these violations and that I don't think that the process is—I think that this is something that we could have done last month and simply didn't.
                In an effort to bring it to a close and I think to address the underlying allegations of the complaint, I would move that we grant the motion to reconsider, that we readopt the same order that we made last month except we find additionally that the [C]ommittee violated section 9-8.10 by making payments to these vendors, [Happy's] and [the Bank], in excess of fair market value for the goods and services received and that it further violated this section by making payments for gas and other services for vehicles not owned or leased by the [C]ommittee, that we impose—for these violations we impose an additional fine of $5,000 to run concurrently with the fine that we imposed last month. So it wouldn't be an additional fine—we would find the violation and

impose the fine, but it wouldn't be an additional five. It would run concurrently with the five that we approved last month. That's my motion."

¶ 72 The Board's general counsel indicated he recommended the Board deny the motion to reconsider on belief "that our finding that the [C]ommittee had violated [s]ection 9-8.10 adequately addressed the points that were raised."

¶ 73 Vice Chairman Gowen expressed concern with a finding the evidence was sufficient to support a violation of section 9-8.10(a)(9).

¶ 74 Following the discussion, the Board voted on Member Carruther's motion. The motion failed by a vote of 4 to 4. Cooke's motion to reconsider was denied.

### V. Board's Order
¶ 75

¶ 76 On June 22, 2017, the Board issued a written order, denying Cooke's motion to reconsider.

### W. Petition for Review
¶ 77

¶ 78 On June 28, 2017, Cooke filed a petition for review with this court.

### II. ANALYSIS
¶ 79

¶ 80 Cooke argues we should remand the matter for the Board to address and issue rulings on the merits of his section 9-8.10(a)(2) and (a)(9) claims. Alternatively, Cooke contends, to the extent the Board issued rulings against him on those claims, we should find those rulings to be clearly erroneous based on the evidence presented.

¶ 81 The Committee contends this court lacks jurisdiction to address Cooke's arguments. The Committee does not dispute Cooke filed with the appropriate court a timely petition for review. *Id.* § 9-22(1), (2). Instead, it asserts we lack jurisdiction because Cooke was not "adversely affected" by the Board's decision. *Id.* ("Any party to a Board hearing, any person who files a complaint on which a hearing was denied or not acted upon within the time specified in Section 9-21 of this Act, and any party adversely affected by a judgment of the Board may obtain judicial review ***."). In a related argument, both the Committee and the Board argue Cooke lacks standing to pursue his appeal because he prevailed before the Board and suffered no adverse effect from the Board's decision. That is, the Committee and the Board contend Cooke received a public hearing on the claims properly before the Board and the Board found Cooke had proved those claims.

¶ 82 The Committee's and Board's jurisdictional and standing arguments are premised on the underlying conclusion the Board allowed only Cooke's section 9-7 and 9-11 claims to proceed beyond the closed preliminary hearing but *not* his section 9-8.10 claims. Cooke disagrees with the Committee's and Board's premise, maintaining the record fails to show his section 9-8.10 claims were dismissed following the closed preliminary hearing. To resolve the Committee's and Board's arguments we must first resolve whether, based on the record presented, Cooke's section 9-8.10 claims advanced beyond the closed preliminary hearing.

¶ 83 In his complaint, Cooke alleged the Committee's expenditures to Happy's and the Bank violated section 9-8.10(a)(2). At the closed preliminary hearing, Cooke alleged the Committee's expenditures to Happy's violated section 9-8.10(a)(9). Following the closed preliminary hearing, the Committee filed a motion to strike and dismiss the complaint, alleging "each of the allegations contained in the [c]omplaint fails to state an offense or violation upon

- 14 -

justifiable grounds." Cooke filed a response to the Committee's motion to strike and dismiss, again raising alleged violations of section 9-8.10(a)(9). The Committee noted, both at the closed preliminary hearing and in its reply to Cooke's response to its motion to strike and dismiss, Cooke had not raised his section 9-8.10(a)(9) claims in his complaint.

¶ 84 In his April 29, 2016, written recommendation, the hearing officer noted Cooke (1) had alleged the "Committee violated [s]ection *** 9-8.10," generally and (2) "question[ed] the propriety of expenditures related to the automobiles for gas and/or repairs." In reviewing the Committee's motion to strike and dismiss, the hearing officer noted the complaint alleged specifically a violation of "[s]ection 9-8.10[(a)](2)." After finding Cooke had entered sufficient evidence to support his allegations and the Committee "was aware that the propriety of [the] expenditures was at issue," the hearing officer recommended the Board deny the Committee's motion to dismiss, without qualification. As to whether the complaint was filed upon justifiable grounds, the hearing officer found the expenditure reports "lack[ed] sufficient detail to determine if the breakdown is accurate." The hearing officer recommended the Board (1) find, without qualification, the "[t]he [c]omplaint is filed upon justifiable grounds" and (2) order the Committee to amend its reports to provide additional information, with the failure to do so resulting in "[t]he matter" proceeding to a public hearing. The Board's general counsel concurred with the hearing officer's recommendations but recommended the Board order the Committee provide specific information in the amended reports.

¶ 85 At the Board meeting, the Board's general counsel noted to the Board:

"[Cooke] is challenging the propriety *** [of] the reported expenditures, and the relatively obvious poor quality of the reporting on these particular expenditures makes it difficult to draft a more focused complaint. The expenditures to [Happy's] lack sufficient detail breaking down the various payments as being for gas or repairs to particular vehicles and whether those vehicles are owned or leased by the [C]ommittee or are private vehicles. The expenditures to [the Bank] lack sufficient detail as to the specific purposes and ultimate recipients of the disbursements."

The Board, both in its oral pronouncement and written order, (1) outright denied the Committee's motion to dismiss; (2) found, without qualification, the complaint was filed on justifiable grounds; and (3) ordered the Committee to file amended reports with the failure to do so resulting in the matter, without any explicit limitation, proceed to a public hearing.

¶ 86 In summary, the record shows (1) Cooke's section 9-8.10 claims were presented to the Committee, the hearing officer, and the Board; (2) the Committee filed a motion to strike and dismiss the complaint in its entirety; (3) the hearing officer recommended the Committee's motion to strike and dismiss be denied outright; (4) the hearing officer recommended the complaint be found to be filed on justifiable grounds without qualification; (5) the Board outright denied the Committee's motion to strike and dismiss; (6) the Board found the complaint was filed on justifiable grounds without qualification; and (7) the Board ordered the matter, without any explicit limitation, proceed to a public hearing if the Committee did not amend its reports. We find the record does not show the Board dismissed Cooke's section 9-8.10 claims following the closed preliminary hearing.

¶ 87 We find additional support for this conclusion in the proceedings following the closed preliminary hearing. At no point during the later proceedings did the appointed hearing officer, the Board's general counsel, or the Board suggest a qualification or limitation existed as to the finding the complaint was filed upon justifiable grounds or the matter should proceed to a

public hearing if the Committee failed to amend its reports. In fact, the Board and its officers reiterated on multiple occasions these findings without any qualification or limitation. Additionally, at the public hearing and subsequent board meeting, Cooke presented argument on his section 9-8.10 claims. While the hearing officer concluded he was not tasked with addressing the merits of Cooke's complaint, he cited section 9-8.10(a)(9) and (a)(2) as pertinent statutes in his written recommendation. Similarly, while the Board focused on the issue of whether the merits of the complaint was properly before it, at no time did any member suggest in response to Cooke's arguments his section 9-8.10 claims had been dismissed a year earlier following the closed preliminary hearing. Cooke further argued, both in a written motion to reconsider and at the Board meeting on that motion, the Board failed to address and issue rulings on his section 9-8.10 claims. Member Carruthers moved to grant the motion to reconsider, address the underlying allegations of the complaint, and find Cooke had established his section 9-8.10 claims. The Board's general counsel indicated he previously recommended the Board deny the motion to reconsider on belief its finding in the May 18, 2017, order indicating the Committee had violated section 9-8.10—a citation the parties now agree was in error—adequately addressed Cooke's section 9-8.10 claims. Vice Chairman Gowen expressed concern with a finding the evidence was sufficient to support a violation of section 9-8.10(a)(9). These statements and actions of the Board and its members support the conclusion Cooke's section 9-8.10 claims advanced beyond the closed hearing.

¶ 88 In reaching this decision, we recognize the Board's May 18, 2016, order made an explicit finding the complaint was filed on justifiable grounds only with respect to the allegations "that the expenditures made to [Happy's] and [the Bank] lack sufficient detail." Given the record presented, we conclude that finding alone does not show the Board dismissed the Cooke's section 9-8.10 claims. We also recognize Vice Chairman Gowen's comments at the meeting on the Committee's second motion to stay, indicating the Board's prior order directed the Committee to file amended reports, which was "a very limited obligation on [the] [c]ommittee, extremely limited." We find Vice Chairman Gowen's comments correctly note the Committee could have avoided a public hearing at that time had it complied with the Board's order to amend its reports. His comments, however, do not support a finding the Board dismissed Cooke's section 9-8.10 claims following the closed hearing.

¶ 89 Neither the Board nor the Committee dispute, where a claim advances beyond a closed preliminary hearing, the Board is required to address and rule on that claim. Here, it is clear the Board did not address or issue rulings on Cooke's section 9-8.10 claims following the closed preliminary hearing. We find Member Carruther's motion to grant Cooke's motion to reconsider—a motion that ultimately failed—is insufficient to show the Board addressed and issued rulings on Cooke's section 9-8.10 claims. Cooke's petition for direct review is properly before this court. Cooke has standing to raise the Board's failure to address and rule on his section 9-8.10 claims.

¶ 90 The Committee contends, even if this court has jurisdiction and Cooke has standing to pursue his appeal, we should reject Cooke's request to remand for the Board to address and rule on his section 9-8.10 claims because he cannot be accorded any additional relief. Specifically, the Committee contends Cooke cannot be accorded any additional relief because the Board already (1) ruled in his favor "on different claims" and (2) imposed the maximum possible penalty under section 9-10.

¶ 91 In support of its argument suggesting Cooke cannot be accorded any additional relief because the Board already ruled in his favor "on different claims," the Committee broadly asserts, parenthetically citing *Matejczyk v. City of Chicago*, 397 Ill. App. 3d 1, 9, 922 N.E.2d 24, 32 (2009), and *Russell v. Good Shepard Hospital*, 222 Ill. App. 3d 140, 144, 583 N.E.2d 672, 675 (1991), "[i]t is well-established that a favorable decision on one count of a complaint will render the dismissal of other claims moot." The cases cited, however, do not support the Committee's broad assertion.

¶ 92 The Board found the Committee willfully failed to comply with parts of its May 18, 2016, order. The parties also agree the Board found the Committee violated sections 9-7 and 9-11. In support, the parties cite a finding in the Board's May 18, 2017, order, which stated "[t]he evidence presented at public hearing established that the [Committee] violated [s]ection 9-8.10 of the *** Election Code by filing disclosure reports that were insufficient with regard to documentation, amount and accuracy of reported expenditures to [the Bank] and [Happy's]." The parties agree the Board's citation to section 9-8.10 was in error, and the substance of that finding shows the Board found the Committee violated sections 9-7 and 9-11.

¶ 93 We find Cooke's section 9-8.10 claims, if proved, would establish additional violations separate and apart from the Board's other findings. That is, Cooke can be accorded additional relief on his complaint. We decline to issue substantive findings on these claims for the first time on appeal. Additionally, on remand, the Board can address for the first time whether the Committee may be subject to additional fines under the Election Code if it finds in favor of Cooke on any of his section 9-8.10 claims.

¶ 94                                     III. CONCLUSION

¶ 95 We remand for the Board to address and issue rulings on the merits of Cooke's section 9-8.10(a)(2) and (a)(9) claims. We also direct the Board, based on the concessions of the parties, to amend its May 18, 2017, order to show the Committee violated sections 9-7 and 9-11 of the Election Code.

¶ 96 Remanded with directions.